Take your time setting up, I'll go ahead and call the second case, number 22-13763, the Joggers Run Property Owners Association. Ms. Carroll, whenever you're ready. Thank you, Your Honor. Good morning, I'm Jennifer Carroll, and I'm here with Amicus Curiae, who will be arguing also on the main part of the appeal. We've divided our time, you're aware of that, 6-5-4, we'll do the four rebuttal. I represent Sarah Watts, the appellant in this case. This case involves a statute out of the Fair Housing Act. I'm going to quote that statute because I think the language is extremely important, the clear language of that statute. The Fair Housing Act provides that it is unlawful, quote, to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of race, color, religion, sex, familial status, or national origin. We've already held that 3604B reaches post-acquisition conduct, right? That's right, Your Honor, several times, many times. But now the question is, but we also explained in our case, which is I think is, I don't even have the citation here, I wrote it down somewhere, but in any event, we also explained that there is a nexus requirement of a sort, right? And that not everything that is post-acquisition is covered. You agree with that so far? Yes, I totally agree, Your Honor. Okay, so the question is, why is there a nexus, the required nexus here for each of the different things that Ms. Watts has alleged, right? She alleged things, and I'm not going to go through all of them, but she alleged things like, you know, the exclusion and kicking off of her son from the basketball court on racial grounds, having the car towed because of alleged parking violations when others were not, being excluded or silenced at board association meetings and the like. So those are some, not all. But why is there a sufficient nexus with regards to those sorts of things under our case law? Yes, Your Honor, and you're actually getting to the core of what this case is all about. You're dealing with a homeowner's association. When an individual buys a house in an association, right, we know under Florida law that it is mandatory when you buy that house in that association that you have a contract, you are a member of that association, you have to go by the rules and regulations, they've got duties to you, you've got duties to them. That occurs at the time of sale, okay? Then, and that takes care, I think, of the first part of the statute. And then the second part, you've got the privileges, benefits, services post-acquisition, and that applies. But I think that's very important that membership is mandatory in the association, and we have several cases, we've cited them in all the briefs, that the provision of services in the homeowner's association is, quote, part and parcel with home ownership, including, quote, the rights to use designated common areas as an incident of their ownership. I actually, I found the Savannah case very helpful where Judge Middlebrooks, he gets into a great analysis, but what he says there, in Florida, planned communities are governed by Florida's Homeowners Association Act. A buyer purchases a home within such a community subject to the community's applicable declaration of covenants, okay? Accordingly, quote, part and parcel of the purchase of a home within a planned community are the rights and privileges associated with membership within the community. It would appear, therefore, that in the context of planned communities where association members have rights to use designated common areas as an incident, as an incident of their ownership, discriminatory conduct which deprives them of exercising those rights would be actionable under the FHA. And it's interesting, too, how I think it was the Paradise case where the 11th Circuit upheld the ruling of HUD with their regulation and talked about under that 3604B includes limiting the use of privileges, services, or facilities associated with a dwelling because of, and in that particular case, it was religion of an owner. Excuse me, Counselor. Yeah. I think we're here on a 12B6, so this was a motion to dismiss. We're just limited to the allegations in the complaint. Is that right? That's correct. So I think the strongest part of the district court's order is that although you talk about, as Judge Jordan mentioned, the parking violations, there are also allegations related to roofing, the basketball court, et cetera, that you don't specifically cite to the HOA rules and regulations that were actually violated. You don't have to. I don't think there's any authority, and the district court judge did not cite to any authority, that you have to cite to the particular provisions. I would refer this court to specific allegations in the complaint. You have, well, you start with Paragraph 3, and then I think there's 62, and I'll give you the specifics of 27, 29, 30, 34, where she does, the plaintiff does relate everything to the association, and she makes it clear, she's a member of the association. Well, you say, for example, in Paragraph 29, where you speak to the plaintiff didn't receive warning stickers, but what's the provision in the HOA contract that entitles her to that? Well, she kept talking, remember, when you read the complaint, it talked about the parking rules, selective enforcement of the parking rules, and reading the complaint as a whole, all of that is part of the HOA documents, which is the contract, and all that is public record, of course, as you know, in Florida. But she doesn't have to get into, she doesn't even have to attach it, she doesn't have to specify, but she does make clear, and I would refer you again to, I'm going to read it to you, Paragraph 3, Material Times, she was a resident of the community subject to the governing documents of defendant, mentions the, talks about the joggers run property owners association, and then I believe, I think it's 62, I want to get that. Plaintiff was discriminated against based on alleged violations of the contractually agreed to covenants and restrictions of the community homeowner association rules and regulations, and I believe it was in 80, well, in 70, when defendant acted against the plaintiff's contractual . . . I'm sorry, Counselor, so your position is that just based on the face of the complaint, what some could consider to be pretty generalized allegations are still sufficient to have overcome, and provided the defendants with notice for purposes of their answer, exactly which regulations were violated because that document or the regulations document is publicly accessible? Well, it's probably accessible, but no, no, no, I'm just saying just based on the complaint itself, don't even, you don't even have to go outside of it, okay? And I'm going to refer you to the META case, M-E-H-T-A, I believe I cited it, 432 Fed Apex 614-211, because I thought that was, I found that interesting because they made similar claims as our plaintiff, and the court found that that was sufficient to state a plausible claim of discrimination in the case, so pleaders must provide, of course, opposing counsel fair notice of the nature of their claims, the basis of their claims, and a general indication of the type of litigation that is involved. So, to cross the threshold, a plaintiff must provide enough details about the subject matter of the case to present a story, okay, that holds together, and remember, we all know the Fair Housing Act with its purposes, and that's why you construe it liberally, broadly, but when you look at the complaint, and you look at the allegations, and you look at what's being alleged in there with the facts, it's clear that there's discrimination going on while this woman is living in Joggers Run, and she specifies what acts were being conducted, and she makes it clear that it was by HOA board members, HOA conduct, and that's what's they call racial slurs, which is, you know, just outrageous, but at the backdrop of that, they're limiting her time, you know, to even when she can speak, and just one thing after another. I feel like that goes to, I mean, and I don't know how to resolve this issue, but without identifying a right, for example, in the HOA bylaws to speak at a meeting, we're just left with sort of these allegations that bad things happened, and it's not really tied to something specific that would say the HOA violated some obligation to her, right? Well, she's talking about, for example, with the parking rules, I mean, that's all part of the HOA documents, and she says the HOA documents. I think the standard is liberal here, but just like in the Metme case, do you have enough to put your defendant on notice of what your story is and what's happening here? I think, I mean, I speak only for myself and my general view of the case so far. Okay. Is that you may not need to cite chapter and verse of the bylaws or articles of the HOA with regards to the use of common areas? I mean, unless somebody shows something very different, it's a common sense understanding that people who belong to a homeowner's association get to use common areas, and so I don't think that one is sort of self-evident to me at at least a pleading level, but the other ones, I'm not sure you can just assume that there is a right in the documents that she's being denied the privilege of. Maybe I'm wrong. Well, Your Honor, I think, you know, and she makes allegations, you know, defendant acted against the plaintiff's contractual rights and privileges and made it clear, did so in a manner directed towards plaintiff and not towards other white members of the community. Does she have to go beyond that? You know, when you get to summary judgment stage, when you certainly get to trial, you're going to pull out all those specifics, but for pleading, and what's the rule, and I go to the rule with pleading, is it 8A, and I want to just quote that right, but, and like I said with the medical case, but with pleading, a short and simple statement, there's no requirement to get into the kind of detail. And even going into the exact provisions that are being violated, I still say, are you giving the defendant notice of what your story is? And I think it's clear by these acts, and she is saying, and we, don't we have to assume, take these allegations as true? She even says these acts violated the association documents, right? They violated the association contract. For purposes of a motion to dismiss, and stating a claim for relief, I believe we're required to assume that is true. Ergo, then this woman has the right to prove her case. What was the racial composition of the entire board? I mean, I ask specifically in light of the fact that Ms. Watts defines herself as a black African-American woman, but Florida is very racially diverse in terms of its black population. So what was the composition, and if there were indeed other people of color, or specifically other black people, what impact does that have, if any, on the treatment she experienced? Well, and I'd have to try to go and see, but specifically in the record, my understanding was that she was the only one, but I'd have to go and see where I saw that in the record. But I don't think that matters, because even under her allegations, right? I don't think it matters. You know, you take each individual, and how is this individual treated? And it's clear, I think, that racial motivation is obvious by the statements that were made to her, which we have to assume are true, and was a backdrop with respect to the conduct that followed also with respect to Ms. Watts. Okay, Ms. Carroll, we've taken you way beyond your time. Thank you for answering our questions. You've saved your full four minutes for rebuttal, and we'll hear from Mr. Colfax. Okay, thank you. Your Honor, and may it please the Court, Reed Colfax on behalf of AMICI National Fair Housing Alliance and a number of their membership organizations. Let me start with addressing a theme that I think came out from the questions from all of you, which is this concept of whether there needs to be a right to the services and privileges that Ms. Watts alleges she was discriminated against. The answer is no. There does not have to be a right. Let's talk about that for a second, then, and you can discuss it in the context of your comments. Assume that an HOA and its articles, bylaws, whatever they're called, the governing documents, right, once someone becomes a member and owns property in the association, those say that homeowners are not allowed to speak at HOA board meetings. They can only submit comments in writing, and that it is the sole discretion of the board to allow oral statements or oral testimony. If there's an allegation that a plaintiff was denied the ability to speak because of his or her race, is there an alleged violation of the FHA that's stated? Because you included in the hypothetical an allegation that the denial was because of race, the answer is yes. So in that scenario, it would be the homeowners association saying, black people, you have to submit your comments in writing. White people, you may speak freely. No, no, no, no, no. That's not my hypothetical. The articles say you can speak only if the board allows you to. And she wants to speak, and they say, no, submit it in writing. She claims that it's on the basis of race. Is there an FHA violation stated? She would have to show more, right? She would have to give specific allegations about why she believes it was on the basis of race. No, no, no, but she doesn't have to identify a right. That's correct. She does not have to identify a right. And how do you make that consistent with the language which says rights and privileges? It says services and privileges, right? And the services that Ms. Watts is alleging is the service of providing a basketball court, the services of governance of the homeowners association where you have selective enforcement. And in your hypothetical, if it were parallel to Ms. Watts' allegation, she would say I get up to speak as a black woman. They say no. I understand I don't have a right to speak, but they say no to me because I'm a black woman, but they say yes to similarly situated white residents. That wasn't in my hypothetical. It's not in your hypothetical, but that's the hypothetical that is parallel to Ms. Watts' allegations because every single one of her allegations is I was told I could not do this or there were certain rules that were forced against me in a certain way and similarly situated white residents were treated differently. Every one of her allegations, whether it be yard maintenance, she gets violations for not maintaining her yard. The neighbor who is white has a worse yard doesn't get that violation. The difference in treatment is in the service, and you don't have to have a right to the service. The service is being provided, perhaps voluntarily by the homeowners association, but if there's discrimination in it, then you have a problem. Can I ask your thoughts on the 1981 claim? Because you've got 1982, which is directly related to real estate, and then you've got this 1981 claim that's really about contract. Why isn't this a 1982 claim and not a 1981 claim? Why can't it be both? It can be both because they certainly overlap to start with, but you have a contract and you have a contractual relationship. I'm not super familiar with Florida HOA law, but is it really a contract if it runs with the land and you don't have the ability to decide whether you're going to be part of it or not? It is a contract because you have to sign up for the homeowners association. You're making payments to the homeowners association, and you're receiving something back. In the 1981 context, you don't have to have a written contract. It comes up in public accommodation scenarios where you're making a purchase, and there's an implied contract. So even without specific allegations of here's exactly what the contract said, Ms. Watts does allege I was a contracted member of the homeowners association. That creates a contractual relationship, and what 1981 says is if there is discrimination in that contractual relationship, then you have a claim. And so 1982 overlaps with that to a certain extent, but only in the context of property-related activities, services, and so forth. I guess it just seems like 1982 was the one that was directed towards this, right? I mean, like, so just let's, this would be sort of a hypothetical, but I mean let's just assume that the HOA had some kind of covenant that said black people are not allowed to speak at the meeting. You know, white people are, right? It's not a matter of practice. It's just like in there. Wouldn't that be like a classic 1982 claim and not a 1981 claim? It would be both, right? Because you have the 1981 where you have a contract. 1982 does not require a contract, right? It includes just the concept of being able to hold property free from discrimination. So 1982 is broader in some senses, but here in your hypothetical where you do have a contract, then you would have both claims because you have a property-related service, the service of the governance of the Homeowners Association of all the properties, and as well as a property-related service where there is discrimination occurring. So in both contexts, you would have both a 1981 and a 1982 claim. I want to just make one point on the 3617 claim because Ms. Carroll didn't get an opportunity to address it. The 3617 claim, there's an important aspect of it that was not addressed by the district court in that there are really three ways that the 3617 claim could be, that Ms. Watts could prevail on the 3617 claim based on allegations. The first is articulating the right to be free from discrimination in the use and enjoyment of their home. That is a sufficient allegation to trigger a 3617 claim. If that right to use and enjoy your housing is interfered with on a discriminatory basis, that's enough. And then you could sue, I mean, and I'm not super familiar with this area of the law, but I mean you could sue like your neighbor who, I mean, just your neighbor is racist and I don't know what racist neighbors do, but is an annoying racist neighbor and you could sue them because they interfere with your enjoyment of your property? You can. And it has happened, it has been upheld. It's actually a fairly complicated area of the law, but that does happen. Usually the way it pans out is you have a homeowners association that does not enforce its rules against the discriminating neighbor and the homeowners association may or may not be liable in that scenario, but those are situations where there have been claims. And in fact, the Halperin case out of the Seventh Circuit, which LaGrange disagreed with in terms of whether or not post acquisition conduct applies in the Fair Housing Act, they actually upheld the 3617 claim in exactly that scenario you talked about of a neighbor on neighbor harassment. So that can happen. Do you have to show a 3604 violation first? You do not. And that's very clear. And the Soforelli case out of the Eleventh Circuit is really instructive in that way. That case involved a man who had a mobile home that he was looking to locate in an area where it was believed it would be occupied by a nonwhite resident. The neighbors blocked him from taking that home to that place. There was no 3604, underlying 3604 claim, but the Eleventh Circuit upheld the 3617 claim saying the neighbors were intentionally interfering with his ability to take that house to a place where it would be occupied by a nonwhite resident and that was sufficient for a 3617 claim without an underlying 3604 allegation. All right. Thank you very much. Thank you. Thank you. Ms. Savona. Thank you. Good morning. May it please the court, Terese Savona on behalf of Joggers Run Property Owner Association. This court should affirm the district court's order granting the association's motion to dismiss Ms. Watts' second amended complaint. As discussed here today, the second amended complaint related to Fair Housing Act and the Civil Rights Act. First two allegations, the first one being under 3604B, second under 3617, and then the Civil Rights Act for count three under 1981 and count four under 1982. There is something- Can we talk about the first claim? I mean, a claim has to be plausible on its face, right? Yes. And why isn't it plausible, despite the failure to cite chapter and verse about the HOA articles or bylaws, that exclusion from common areas on racial grounds states a claim under 3604B. Under 3604, it needs to be related to the services of a sale or dwelling, even if the chapter and verse is not. But in a homeowner's association with common areas, that's part of the services provided. You are paying the HOA fees every month, and you are bound by the HOA's rules, in part because there are some amenities you enjoy. Security, for example, landscaping, common areas. On that one, I don't know why you have to allege anything more specific. Under the- Specifically for the basketball court, that was a common area. That was closed even prior to- Then it was reopened. It was reopened. According to the complaint, it was reopened. Correct. And then her son was, I'm summarizing, kicked off. Correct. Because he was black. It actually does not indicate, I don't believe in the complaint, that it indicates that that was the reason. What does the complaint say? Wasn't it that the black kids were too loud and causing too much of a ruckus? Specifically related to the plaintiff's son, and I'm looking at paragraph 16 of the second amended complaint. When they were finally, the basketball courts were finally opened, and while plaintiff's son was at the court playing with his friends on or about August 14th, 2019, Shelly Harsh, white board member, came out and ran to the courts to begin yelling at my son, saying, quote, get the fuck off the court, quote, multiple times. There's an allegation earlier that the reason why the basketball court was closed was because Ms. Harsh and others didn't want black kids coming into that neighborhood to play. There were, at paragraph 15 in the second amended complaint, Judge Abudu, it does indicate that there were several times in the past with trespassers, and there being too many, quote, people of color using the courts, and thus allegedly abused the courts. It does not indicate when that happened, and I think there's a nexus requirement. But doesn't the complaint allege that the 360544 claim is based on racial discrimination? Not directed to Ms. Watts, and I think that's the big... That's not the ground on which the district court dismissed. The district court didn't say, Ms. Watts, that discrimination was against your son and not against you. It's therefore not actionable by you. Correct. That's not the ground the district court gave. The district court said on the 3604B claim, the district court said that there wasn't enough of a nexus with regard to the sale or rental of a dwelling. And I'm wondering why, at least as to the common area allegation, that was correct. Because what has been argued below and consistently in our answer brief is that the allegations that were set forth in count one were conclusive statements and that they don't indicate that there was the nexus, that these are racial discrimination cases, whether under the Fair Housing Act or the Civil Rights Act, that there needs to be more than conclusive statements. I agree with my colleague that when looking at the pleading standard, that there are... We take inferences and we take these to be true. However, factual allegations that are conclusory are not taken to be true because... Is it your position that... ...but that the racial discrimination allegations are conclusory? That the racial discriminations are conclusory as to... That's different than the district court's reasoning, right? The district court didn't say that. The district court didn't say, you have failed Iqbal and Twombly plausibility by stating conclusory claims about alleged discrimination. What the district court said was that there wasn't a sufficient nexus to the sale or rental of a dwelling. That's at pages five and six of its order. That's it. Now, you can, of course, ask us to affirm on alternative grounds that were pled and preserved below, but I just want to make sure that's not the ground the district court ruled on, right? That is correct, and this court does have a de novo review for purposes of the motion to dismiss,  that it needs to be tied to the sale or the rental, and even if specific allegations related to the declaration or the governing documents of this property owners association, even if they are not pled specifically, there needs to be some tying. What about, I mean, we haven't talked about this, but this was the most concerning allegation to me that the racial harassment was so bad that she had to sell her house. Why isn't that pretty clearly tied to the holding of property? As to the civil rights claim? Yeah, as to the FHA claim, and I mean, the FHA claim says sale. I mean, she had to sell her house. And again, I would go back to my position that I don't think the statements that were made, even though they are troubling regarding individuals of color, that they were not made directly to Ms. Watts, and there needs to be a basis that is tied to that. Even regarding to that she felt she needed to move out of her home, it said that there are citations and violations that were given to her. I think one thing that I do want to correct is that the second amended complaint does not indicate that even the neighbor, when they talked about, my colleague mentioned the reference to the yard and that that was enforced incorrectly. It indicates that, yes, Ms. Watts did receive citations and violations, but it does not indicate that a similarly situated white neighbor did not receive citation. Did you argue any of this in your brief? Yes. That there were no allegations that these were racially based, that there were insufficient allegations that this was race-based? We alleged, I believe, in the first, I think it was subsection A, regarding that they did not meet the pleading requirements regarding each of the individual claims. I think a fair reading of your brief is that you did raise the general contention that the complaint was pled in a conclusory way. Yes, Your Honor. You did not fine-tune it to the extent that you're doing so in oral argument here. You didn't take each claim apart and say this claim was also conclusory for these three reasons. You made a broad general statement above the individual claims that the complaint as a whole was conclusory. You did do that. I understand, Your Honor, and I do apologize if it is going a little outside of it. You've been answering our questions. There's no need to apologize. I just wanted to correct something because as I read the complaint, she does allege that there were parking rules applied to her in a way that weren't applied to white neighbors, that she was forced to make changes to her roof in ways that weren't applied to white neighbors. For purposes of the discrimination claim, that is in the complaint. There are allegations, and there are detailed allegations in the parking, and what I was referring to, Judge Abudu, was the yards because there is an allegation that she received, that Ms. Watts received a notice regarding, I think, an unsightly yard, and she indicated that her white neighbor had bags of dog feces in the yard and did not receive it. I was trying to clarify that for that one, it did not indicate that that white neighbor did not receive citations, only that the white neighbor had an unsightly yard. But that's something that would come out during discovery and lead, perhaps, to summary judgment, and that's my concern, is that at the motion to dismiss stage, even if she didn't cite a particular HOA regulation, she does have in here complaints of racial discrimination. She identifies herself as an African-American woman and that white neighbors were treated differently. The behavior that she cites from the board comes from white board members, so at least at the motion to dismiss stage, why is that not enough? Because I think, and even though, and I agree with you, I think there are some allegations in the second amended complaint that indicate that there was some differences, but I think for purposes, for example, the parking, I think the facts don't 100% line up with the similarly situated neighbor. For example, the white neighbor was allowed, it indicates in the second amended complaint, that the white neighbor could have a car that was undecaled and parked in the driveway, and there were many difficulties that Ms. Watts alleged related to her son's vehicle. It doesn't indicate, though, when her son's vehicle was towed, it doesn't indicate if it was in her driveway and undecaled. This has always been the problem for judges and lawyers with regards to Iqbal and Twombly because a claim can't be conclusory, but the Supreme Court has explained after Twombly that you also don't have to be hyper-technical and allege every single granular fact. Correct. Right? And so do you have to lay out every single thing that would make the white neighbor a proper comparator to win the case at the end of the day? I don't think for purposes of winning, I think for getting past the pleading standard, there needs to be a similarly situated, a disparate treatment. To make the claim... To state the claim. To state the claim or to state a claim that would be a winning claim if it was proven or to make a claim just plausible. That's the difficulty for us as judges, is figuring out, for me only, maybe my colleagues find it easier, but that chasm between conclusory and plausible and not hyper-technical... Let me ask you to respond to this. So in paragraph 41 of the operative complaint, it says, quote, plain as white, non-African-American neighbors were not subjected to the same discriminatory, harassing, and retaliatory treatment she was subjected to, end quote. Is that not a good enough allegation? I think for purposes of when it says that she sold her home because of this, in this, it is conclusory. I'm not indicating that there are other... Wait, what's conclusory about it? That she... It says that she was discriminated and retaliated against and that white neighbors weren't, and I think there it doesn't specify. I think that is a conclusory allegation. I do want to indicate, Judge Brasher, I think maybe if that wasn't in there, I don't know if that is the end-all, be-all for the second amended complaint. So I think just looking at that, and I'm looking at paragraph 41 specifically, maybe myopically. Well, I guess my question is, so what are you saying that she should have said is instead of plain as white, non-African-American neighbors, say like plain as white, non-African-American neighbors, Chuck, Larry, John, Susan, at these addresses? Is that what she's supposed to say? No, Your Honor, and I apologize if that was what I was leading to. No offense to Chuck and Larry. No offense to them. I'm just saying, I don't understand what the pleading standard is that you would require her to... What level is she supposed to reach on that? Well, and I think, and maybe if I can back up, there are many different types of factual situations that happen here. We have a parking. We have a basketball court. We have regulations at a board meeting. Being a member of the board of directors for the association. So there's many different things. So that's why I said, and just looking at this under a microscope, this specific one doesn't address those. For each of those individual things, as long as it meets the elements of each cause of action, because there are certain different elements for a 3604B, a 3617, that there needs to be disparate treatment for those specific allegations. So that's why this in and of itself, when looking at it, I think does sound that she has demonstrated, but I think when looking at it for purposes of each individual count, were they pled? And I think that's my focus, Judge Brasher, is that not that she needs to do more because we're not advocating for a heightened pleading standard that's any different than the federal pleading standard in purposes of discrimination cases, but looking at this paragraph in and of itself, that doesn't identify all the different bases because I do believe there are different grounds for each individual claim. And one thing, and I know Judge Jordan, you indicated what we argued in our answer brief about the conclusory allegations. Another thing is all the factual allegations in this complaint were reincorporated in every single count. So in every single count, every single factual allegation is supposed to be analyzed, and it's unclear, for purposes of putting the association on notice, which one falls under what cause of action for purposes of cause of action one and two, the two fair housing acts, they are actually identical in the second amended complaint. The paragraph- Because those causes of action are pretty similar themselves. They are tied. They are similar. The difference is that 3604B is going to be tied. The district court thought that you needed to plead a 3604 violation to get a 3617 violation pled. Correct. So those two, I don't understand why you couldn't incorporate the same set of facts into both of those claims and why that's problematic in any way. Because there's case law that indicates that when all the factual allegations that are reasserted for every single claim, it doesn't put a defendant on notice for purposes of meeting the pleading standard. And so for all of these allegations, all the different factual scenarios that Ms. Watts alleges encountered and that we take as true, those are all realleged under every single count. And so I think for purposes of looking at each individual count and trying to identify whether Ms. Watts met the pleading standard under 3604B, 3617, 1981, 1982, there are different elements for each, different facts that may or may not apply to each. I see my time is up. If I could briefly conclude. Of course. Your Honor, this case comes down to neighborly disputes and allegations of discriminations. And even if actions are reprehensible and not condoned by court or counsel, the reprehensibility is not the standard. For the reasons set forth here today and for those set forth in our answer brief, the association respectfully requests this court affirm. Thank you very much. I just want to first answer one of the judge's questions. You were asking, Your Honor, if she was the only black member on the board in paragraph 22. I think it was at the board you said. But anyway, in her complaint, she says Planoff was the only black African-American person at board meetings and she was the only one told that she had only three minutes to speak when the floor was open for questions or comments to the board member. And I think when a lot of these allegations I know Opposing Counsel Association wants to try to say, well, take these by themselves. And I don't think you can. I think you have to read the whole complaint. I mean, Opposing Counsel Association, even the district court, is making statements like, well, these allegations are really terrible and reprehensible. But you're not going to meet the standard. But the standard is met on all these and I'm going to address that briefly. But I just think when there's a statement being made calling African-Americans monkeys and then to argue that, well, that's irrelevant. It's not directed to her. I don't think it has to be, number one. Number two, there was a specific allegation of racial slurs that were directed to her and that's by Felicia. That was a specific allegation. So you lead off in the complaint with that and then you have all these other violations. I want to point out, too, let's not forget the right to quiet enjoyment of one's property. And I think that's what Modesto, City of Modesto, that's the 583F3-690, I believe we did cite that. And when talking about the types of post-acquisition discrimination, quote, the inclusion of the word privileges implicates continuing rights such as the privilege of quiet enjoyment of the dwelling. This is under 3604B, okay? So I think this plaintiff, with her allegations, satisfies that standard. She certainly, you know, privileges benefits of living in that community and belonging to the association. But just living in that community, she did not have quiet enjoyment of the dwelling and she makes allegations about the racial motivation, racial intent, and we can draw inferences and isn't that what 8A, the rule, basically says? Yes, you know, you have to give notice of just what your story is, but in simple, you know, simple statements, you don't have to go into an expose. The standard that I'm hearing by opposing counsel here is a heightened standard for a motion to dismiss. You might as well go and do the discovery and be required to do discovery and get into all the particulars and that's not the standard and nor should it be the standard. That's just not right. So I would refer the court to that case and I would refer you to the Wood Strait because Judge Jordan, you raised something to the amicus. Hey, what if the association has a reason for opposing a certain rule like we were using on the three minutes? But what the Wood Strait case said, 667 F 2nd 1198, said, you know, even if you have one reason, you can still have a racially motivated reason and that is sufficient to state a reason under the 3604B. I think that's very important, Your Honor. And I do want to say it comes down to this too and the cases all say it. Deprivation of the full use of incidents to ownership of the dwelling. There can be no question that the allegations do satisfy that. These allegations concern governance of the association, its amenities like the basketball courts, the parking privileges, selective enforcement of rules, okay, that she was subjected to while her white neighbors were not subjected to it. They all related to, again, not only just quiet enjoyment of the dwelling, but to her membership in the association. So you have the direct connection there. And then the Paradise Gardens case that we did cite to this court. The district court... You've run over your time. Oh, I have, okay. But if you want to wrap up, you can certainly do so. I can, okay. So I went back last night and I was reading the district court's order again. And I saw under 3604B, she really didn't get into all this analysis on this. She said, well, all you talked about was tenants, some action with tenants. It's like she didn't really read the other allegations in the complaint and she didn't abide by the full statute. So it's 3604B. And then you have 1981. Remember contractual injury, right? Alleged contractual injury, go to paragraph 62. I think it's in 82. And the contractual injury is the denial, the deprivation of the benefits, the privileges of the home ownership. So, and I think we cited a case law on that. So there's clearly a cause of action that is stated under 1981. And of course, under 1982... It's a wrap up, not a continuation of the argument. All right. Well, thank you very much, Your Honor. And for the reasons that we have stated to you here today and for the reasons that we've set forth in the briefs and the cases cited therein, we do ask that you reverse the district court's decision and remand this case for further proceedings. Thank you very much. Thank you all very much.